## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

RICHARD M. MATHISEN,

    Petitioner,

    v.

UNITED STATES OF AMERICA,

    Respondent.

Criminal Action No. TDC-15-0003
Civil Action No. TDC-17-0343

## MEMORANDUM OPINION

Petitioner Richard M. Mathisen has filed a Motion to Vacate, Set Aside, or Correct Sentence and/or Plea, pursuant to 28 U.S.C. § 2255. In his Motion, Mathisen argues that he received ineffective assistance of counsel because his trial counsel inadequately explained the ramifications of agreeing to the "open" plea agreement he signed, consisting of a plea agreement with a barebones factual stipulation in which he acknowledged only that his conduct met the elements of the crime and with no agreement on the proper application of the United States Sentencing Guidelines ("Guidelines"). Mathisen further argues that his counsel failed adequately to impeach the Government's witnesses at the sentencing hearing and failed to call defense witnesses who would have confirmed Mathisen's limited role in the charged conspiracy. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* Rule 8(a), Rules Governing Section 2255 Proceedings for the United States District Courts; D. Md. Local R. 105.6. For the reasons set forth below, the Motion is DENIED.

## BACKGROUND

On January 7, 2015, Mathisen and co-defendant Philip Rice D'Avanzo were charged in a one-count indictment with Conspiracy to Distribute and Possession with Intent to Distribute Controlled Substances in violation of 21 U.S.C. § 846. The indictment arose out of an alleged conspiracy in which Mathisen arranged for co-conspirators to obtain magnetic resonance imaging scans ("MRIs"), had another co-conspirator alter those MRIs to depict injuries, and then had others use the altered MRIs to secure prescriptions by which they obtained oxycodone, which Mathisen and D'Avanzo would then use themselves or sell.

Mathisen retained Robert Bonsib as his attorney. Bonsib is an experienced criminal defense lawyer who has tried over 300 criminal jury trials in state and federal court and who has previously served as both an Assistant State's Attorney for Prince George's County, Maryland and an Assistant United States Attorney for the District of Maryland.

On March 17, 2015, the Government made a plea offer to Mathisen. The offer proposed that Mathisen agree to a Guidelines base offense level of no less than 24, to be determined based on the quantity of oxycodone involved in the conspiracy, with an additional four-level increase for having a leadership role in the conspiracy pursuant to U.S.S.G. § 3B1.1(a) and a two-level increase for obstruction of justice pursuant to U.S.S.G. § 3C1.1 based on allegations that Mathisen had asked a co-conspirator to harm D'Avanzo after they had both been charged. The Government agreed not to oppose a three-level reduction for acceptance of responsibility, resulting in a total offense level of no less than 27. Because there was no agreement regarding the amount of drugs for which Mathisen would be held responsible, the total offense level could have been increased above 27 based on findings by the Court after the presentation of evidence at the sentencing hearing regarding drug quantity.

According to an affidavit submitted by Bonsib, Mathisen refused throughout their discussions to agree to the Government's assertions that he had been a leader of the conspiracy, that he had distributed a large amount of oxycodone, and that he had obstructed justice by seeking to have D'Avanzo harmed. Bonsib counseled Mathisen not to accept the Government's first plea offer because he expected the Government still to seek the maximum penalty, 20 years. Bonsib proposed, instead, an "open plea," through which Mathisen would plead guilty to the charged conspiracy but would remain free to contest at the sentencing hearing the Government's assertions regarding Mathisen's role in the conspiracy, the drug quantity at issue, and the alleged obstruction of justice, which included the Government's contention that Mathisen had sought to cover up the death of a woman, Cecilia Gavidia, who had died in Mathisen's home after ingesting a controlled substance. Bonsib asserts that he explained to Mathisen that his disagreements with the Government on these matters were sentencing issues, not trial issues, as Mathisen at no point denied that he was involved in a conspiracy to distribute oxycodone and was prepared to plead guilty to that charge.

With Mathisen's permission, Bonsib successfully negotiated with the Government for an open plea agreement. During his discussions with the Government, he also learned that if Mathisen did not plead guilty to the original indictment, the Government would seek a superseding indictment to add counts for obstruction of justice and possibly a count for distribution of a controlled substance resulting in death, based on Gavidia's death, in violation of 21 U.S.C. § 841(b)(1)(C). Such a charge would have carried a 20-year mandatory minimum sentence. *See id.*

According to Bonsib, he advised Mathisen that by accepting the open plea agreement, he preserved his ability to challenge the Government on these sentencing issues, preserved the

3

possibility of receiving the reduction for acceptance of responsibility, and avoided a superseding indictment that would have exposed Mathisen to higher penalties. Bonsib also asserts that he told Mathisen that the Government has a lower burden of proof at sentencing hearings—preponderance of the evidence, rather than beyond a reasonable doubt—but noted that even with a trial, issues such as drug quantity, role in the offense, and obstruction of justice would not be decided by the jury but would be resolved at sentencing under the preponderance standard. Mathisen denies that Bonsib advised him of the different burden of proof at a sentencing hearing and asserts that he did not know that hearsay evidence is admissible at a sentencing hearing.

Mathisen accepted the open plea agreement and pleaded guilty on June 5, 2015. The plea agreement provided that, while Mathisen would plead guilty to the elements of the charged crime, there was no agreement as to the application of the Guidelines. The Government agreed not to seek additional charges against Mathisen based on the alleged plot to harm D'Avanzo or Gavidia's death, but it reserved the right to present evidence at the sentencing hearing regarding these events in support of its proposed sentencing enhancements. At the guilty plea hearing, the Court informed Mathisen that if he did not plead guilty he would have the right to a trial by jury, that the Government would be required to prove guilt beyond a reasonable doubt, and that he would have the right to have all witnesses testify in court, in his presence. Mathisen acknowledged that he understood that by pleading guilty he would be giving up these rights. Mathisen also stated, under oath, that he had discussed the terms of the plea agreement with his attorney, that he understood them, and that he was fully satisfied with his attorney's advice.

The sentencing hearing was held on February 2 and February 3, 2016. The Government called as witnesses Jeremy Zamyslowski, who testified that he participated in the drug-distribution conspiracy, that he was present when Mathisen requested that an associate remove

4

items from his house after Gavidia's death before the police arrived, and that he had been part of a plot to kill D'Avanzo at Mathisen's behest, and Merrit Moore, who testified that he had purchased drugs from Mathisen. The Government also relied on the grand jury testimony of several witnesses, including Kareem Ward, who described the events surrounding Gavidia's death, and on investigative reports from witness interviews, including of D'Avanzo. Further, the Government presented documentary evidence, including text messages between Mathisen and D'Avanzo and records from Mathisen's computer showing the location of multiple facilities that perform MRIs.

The Government argued for a base offense level of 30, based on its calculation that at least 326 grams of oxycodone were involved in the conspiracy and reasonably foreseeable to Mathisen. The Government sought a two-level increase because Mathisen possessed a firearm, pursuant to U.S.S.G. § 2D1.1(b)(1); a four-level increase because Mathisen was an organizer or leader of the conspiracy, pursuant U.S.S.G. § 3B1.1(a); a two-level increase for obstruction of justice based on the attempted cover-up relating to Gavidia's death and Zamyslowski's agreement to kill D'Avanzo, pursuant to U.S.S.G. § 3C1.1; an upward departure based on Gavidia's death, pursuant to U.S.S.G. § 5K2.1; and the denial of the acceptance-of-responsibility reduction pursuant to U.S.S.G. § 3E1.1, because Mathisen had opted for the open plea and had not admitted specific facts relating to the crime. Combined, these positions resulted in a recommended total offense level of 38. With Mathisen's criminal history category of II, this recommendation would result in a Guidelines range of 262–327 months, above the statutory maximum of 240 months. In the end, the Government recommended a sentence of 240 months. In the Presentence Investigation Report ("PSR"), the United States Probation Office agreed with

the Government's proposed Guidelines calculations, except that it recommended a two-level reduction for acceptance of responsibility, leading to a total offense level of 36.

On behalf of Mathisen, Bonsib offered the testimony of Erik Carter, who testified that Mathisen did not possess a firearm; Phyllis Bredice, Mathisen's grandmother, who testified that she paid for all of Mathisen's expenses and that Mathisen suffered from a severe back injury that required pain medication; Kimberly Yourick, a private investigator, who testified that after interviewing numerous witnesses, she did not find evidence that Mathisen had sought to have D'Avanzo harmed or that Mathisen had cleaned up his home after Gavidia's death in order to hide evidence; and Mathisen himself, who testified about his drug addiction and admitted to dealing drugs to feed his habit, but denied that he had any leadership role in a conspiracy to distribute illegal substances or that he had obstructed justice. Bonsib recommended that the Court find a drug quantity corresponding to a base offense level of 24 and that Mathisen receive no upward adjustments for his role in the conspiracy, possession of a firearm, Gavidia's death, or obstruction of justice, all of which would result in a Guideline range of 57–71 months. Bonsib recommended that Mathisen receive a sentence of 57 months.

At the close of the hearing, the Court imposed a sentence of 108 months, less than half of the Government's proposed sentence. The Court ruled that the Government had only proven by a preponderance of the evidence a drug quantity resulting in a base offense level of 26. Although the Court granted the two-level enhancement for possession of a firearm, the Court concluded that the Government, having relied primarily on interview reports of statements by D'Avanzo, had not established that Mathisen was an organizer or leader of the conspiracy and thus applied only a three-level role adjustment under U.S.S.G. § 3B1.1 based on the finding that Mathisen was a manager or supervisor of the operation. The Court also rejected the two-level

6

enhancement for obstruction of justice, finding that the proven conduct of Mathisen during the aftermath of Gavidia's death and in discussing a possible hit on D'Avanzo did not constitute obstruction of justice within the meaning of U.S.S.G. § 3C1.1. As the Court granted Mathisen a two-level reduction for acceptance of responsibility, it found that the total offense level was 29, producing a Guideline range of 97–121 months. In addition to the 108-month sentence, the Court imposed three years of supervised release and a $60,000 fine.

On February 2, 2017, Mathisen filed the present Motion in which he alleges ineffective assistance of counsel. The Court ordered both the Government and Bonsib to respond to the Motion. The matter is now fully briefed and ripe for decision.

## DISCUSSION

In his Motion, Mathisen identifies three grounds for his claim of ineffective assistance of counsel. First, he argues that Bonsib inadequately explained the ramifications of agreeing to an open plea agreement, which caused Mathisen to undergo a mini-trial at his sentencing hearing without the benefit of the procedural and evidentiary protections of a jury trial. Second, Mathisen argues that Bonsib failed adequately to impeach the Government's witnesses at the sentencing hearing. Finally, Mathisen claims that Bonsib should have more fully utilized a private investigator and called additional defense witnesses who would have corroborated his position that his role in the charged conspiracy was limited.

### I. Legal Standard

A prisoner in federal custody may move to vacate, set aside, or correct his sentence on the basis that: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) the sentencing court lacked jurisdiction; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is "otherwise subject to collateral attack." 28

U.S.C. § 2255(a) (2012). The prisoner bears the burden of proof and must establish the claim by a preponderance of the evidence. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

The Sixth Amendment to the United States Constitution affords a criminal defendant the right to "Assistance of Counsel." U.S. Const. amend. VI. A prisoner alleging ineffective assistance of counsel in violation of the Sixth Amendment must ordinarily meet the standard established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under this standard, the prisoner must show both deficient performance and prejudice—that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *id.* at 687, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. Regarding prejudice, when counsel's alleged ineffectiveness relates to a defendant's choice to plead guilty, the prisoner "must demonstrate 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *United States v. Fugit*, 703 F.3d 248, 259 (4th Cir. 2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). The standard is objective, rather than subjective, in that the prisoner must show that "proceeding to trial would have been objectively reasonable in light of all the facts." *Fugit*, 703 F.3d at 260.

## II.     Open Plea Agreement

Mathisen's primary argument is that he received ineffective assistance of counsel because Bonsib did not fully explain to him what would happen at the sentencing hearing, and that Bonsib's failure to do so caused his performance to fall "below an objective standard of reasonableness' measured by 'prevailing professional norms.'" *United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).

8

Mathisen further contends that, had he known that sentencing hearings provide fewer procedural and evidentiary protections for criminal defendants, he would have elected to proceed with a trial before a jury.

Mathisen and Bonsib disagree on whether Bonsib adequately explained that the Government carries a different burden of proof at sentencing than at trial, or that the Court may consider hearsay evidence at sentencing that may not be considered at trial. The Court notes that at the guilty plea hearing, it specifically informed Mathisen, and Mathisen stated under oath that he understood, that by pleading guilty he would be giving up the rights to have all witnesses testify in court and to require the Government to prove his guilt beyond a reasonable doubt. However, the Court need not resolve this factual dispute because even if this Court were to credit Mathisen's version of events and assume that Bonsib had provided no such guidance, Mathisen cannot succeed on the Motion.

Mathisen fundamentally misunderstands the role of the sentencing hearing, as demonstrated by this passage from his affidavit:

> Prior to my accepting and entering the Plea, Mr. Bonsib did not explain to me that I had a choice: a trial with a jury, the burden would be on the Government to prove each element of the charges beyond a reasonable doubt, and the Federal Rules of Evidence would apply, or a Sentencing Hearing, where I would have to defend against the same charge in the Indictment, the same allegations, but without the benefit of a jury, the Federal Rules of Evidence, the lesser preponderance of evidence standard would apply, and the Government could submit any evidence or information, much of it not subject to cross-examination.

Mathisen Aff. ¶ 14, ECF No. 140.

The choice, however, was not between a jury trial and a sentencing hearing, but between a jury trial and a guilty plea. At a trial, the only question the jury would have been called upon to resolve under the beyond-a-reasonable-doubt standard was whether Mathisen committed the crime of conspiracy to distribute or possess with intent to distribute oxycodone. Mathisen has

9

made no persuasive argument that had he gone to trial, he would not have been convicted of this crime. Crucially, the jury would not have been called upon to decide questions relating only to sentencing enhancements, such as the quantity of drugs for which Mathisen could be held responsible, his role in the conspiracy, whether the distribution caused a death, and whether he obstructed justice by trying to hide evidence relating to Gavidia's death or by arranging for someone to kill his co-defendant. Indeed, evidence relating to some of these issues would likely have been excluded as irrelevant to a conviction and unduly prejudicial to Mathisen. The sentencing hearing would have taken place either way and would have proceeded in much the same manner as it did, with the Government able to present hearsay evidence and with the Court deciding sentencing enhancement issues under a preponderance of the evidence standard. *See United States v. Benkahla*, 530 F.3d 300, 312 (4th Cir. 2008) ("Sentencing judges may find facts relevant to determining a Guidelines range by a preponderance of the evidence, so long as that Guidelines sentence is treated as advisory and falls within the statutory maximum authorized by the jury's verdict."). Thus, even assuming that Bonsib did not fully explain how a trial and sentencing hearing differ, such an omission would not have caused his performance to fall "below an objective standard of reasonableness" because those differences would not have affected the way in which the sentencing enhancements were determined. *Higgs*, 663 F.3d at 735.

More importantly, Mathisen has not shown prejudice from the allegedly omitted guidance. Where conviction is not at issue, sentencing issues would have been resolved under the same evidentiary rules and under the same burden of proof, and a guilty plea would, and did, allow Mathisen to receive a downward adjustment to his offense level for acceptance of responsibility, Mathisen cannot show that with a more detailed explanation of the procedural

impact of an open plea, it would have been objectively reasonable for him go to trial rather than to plead guilty. *See United States v. Trice*, 484 F.3d 470, 475 (7th Cir. 2007) (rejecting an ineffective assistance of counsel claim that the defense attorney should have told the defendant during plea negotiations about the sentencing disparity between distribution of crack cocaine and distribution of powder cocaine on the grounds that "[t]his lack of information could not have rendered [defendant's] plea involuntary, because the crack/cocaine powder issue is a sentencing matter and would have been irrelevant to a trial on whether [defendant] conspired to distribute a controlled substance"). Indeed, particularly where, by pleading guilty, Mathisen avoided a superseding indictment in which the Government would have exposed him to additional charges arising from the alleged plot to kill D'Avanzo and Gavidia's death, which carried the potential for a mandatory minimum 20-year sentence, it would not have been objectively reasonable for Mathisen to go to trial even after a more fulsome explanation of the different standards applied at trial compared to sentencing. The Court therefore rejects Mathisen's claim that Bonsib provided constitutionally inadequate assistance of counsel relating to the decision to accept the open plea agreement.

**III.    Sentencing Hearing**

Mathisen further argues that Bonsib performed ineffectively as counsel during the sentencing hearing. The Court will address each of the alleged inadequacies in turn.

First, Mathisen contends that Bonsib did not sufficiently impeach Jeremy Zamyslowski, a Government witness, who testified about the drug conspiracy and the alleged obstruction of justice relating to Gavidia's death and the plan to kill D'Avanzo. In support, Mathisen identifies several of Zamyslowski's prior convictions with the following primary charges—escape, possession of counterfeit traveler's checks, conspiracy to possess counterfeit obligations of the

United States, and burglary. He asserts that Bonsib should have confronted Zamyslowski with the case names, case numbers, courts, charges, dates of conviction, and sentences associated with these convictions, and he should have introduced certified copies of the convictions into the record. In fact, all of these convictions were disclosed during Zamyslowski's testimony, either by the Assistant United States Attorney on direct examination or by Bonsib during cross examination. The proposed additional details about these convictions were unnecessary, as the Court, which was the factfinder at the hearing, was aware from the evidence already presented of the gravity of Zamyslowski's criminal conduct and the fact that some of his convictions involved conduct relating to truthfulness. Finally, the Court notes that while Zamyslowski's testimony was most relevant to the proposed obstruction of justice enhancement, the Court denied the Government's request for that enhancement. Mathisen has therefore failed to satisfy *Strickland*'s first or second prong on this claim.

Second, Mathisen asserts that Bonsib should have offered evidence of numerous drug-related convictions of Kareem Ward, whose grand jury testimony was offered by the Government as an exhibit to its sentencing memorandum. Ward's testimony, however, was primarily about Gavidia's death. Because Ward's testimony was materially consistent with Mathisen's own on the subject, Bonsib opted to use Ward to bolster Mathisen's defense, a strategic decision that made it reasonable, and not ineffective assistance of counsel, to refrain from impeaching Ward with his prior convictions. *See Rose v. Lee*, 252 F.3d 676, 692–93 (4th Cir. 2001) (concluding that a strategic decision to avoid the introduction of certain evidence was not ineffective assistance of counsel). Moreover, Mathisen has not established prejudice. After considering Ward's grand jury testimony, the Court declined to grant an obstruction-of-justice enhancement. Its finding that Mathisen's drug distribution led to the death of Gavidia was based

on the testimony of multiple witnesses, not just Ward, and in any event the Court declined the Government's request that it give an upward variance based on her death. Mathisen therefore has not shown either that Bonsib's decision to refrain from referencing Ward's criminal record was unreasonable or that Mathisen was prejudiced by it.

Third, Mathisen asserts that when the Government relied on the grand jury testimony of D'Avanzo, Mathisen should have offered evidence that D'Avanzo had once pleaded guilty to simple assault, destruction of property, and possession of a controlled substance, even though those charges were later dismissed after D'Avanzo completed a deferred sentencing program. Where the charges were ultimately dismissed, it would not have been reasonable for Bonsib to seek to impeach D'Avanzo with them. *See United States v. Truslow*, 530 F.2d 257, 265 (4th Cir. 1975) (stating that generally "evidence of other offenses and charges and acquittals are not" admissible). Even if the initial guilty plea to these charges could be deemed to constitute a conviction, Mathisen has not shown, and indeed has offered no argument, how the failure to identify these charges prejudiced him. Rather, by the time of sentencing, D'Avanzo had already pleaded guilty to conspiracy to distribute oxycodone in the same case, such that the Court was already aware that D'Avanzo had a more serious criminal conviction than the charges referenced by Mathisen.

Finally, Mathisen argues that Bonsib should have used Yourick, the private investigator, more effectively and called additional defense witnesses at the sentencing hearing to corroborate his claim that he played only a limited role in the drug distribution conspiracy. "'[T]he decision whether to call a defense witness is a strategic decision' demanding the assessment and balancing of perceived benefits against perceived risks, and one to which [the Court] 'must afford . . . enormous deference.'" *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004)

13

(quoting *United States v. Kozinski*, 16 F.3d 795, 813 (7th Cir. 1994)). Bonsib asserts in his affidavit that he chose not to call these additional witnesses because he wanted to minimize testimony from any witness who had knowledge about Mathisen's drug distribution activities, as such testimony could be used to support an increase in the amount of drugs for which Mathisen would be held responsible at sentencing. Because this strategy was reasonable, Mathisen has not satisfied *Strickland*'s first prong. *See Rose*, 252 F.3d at 692–93. Moreover, Mathisen has failed to satisfy *Strickland*'s second prong because he has provided no explanation for how the testimony of additional witnesses would have changed the outcome of the case and thus has not shown how he was prejudiced by Bonsib's failure to call them to testify. Indeed, a pre-sentencing hearing email from Yourick to Bonsib states that she spoke to Mark Dove and Thomas Bradley, two of Mathisen's proposed additional witnesses, but does not reveal any material facts that either witness could offer other than as general character witnesses. Mathisen has provided no basis to conclude that any additional activities by Yourick, such as additional witness interviews, would have changed the outcome of the sentencing hearing. The Court will therefore deny the Motion regarding Bonsib's effectiveness at the sentencing hearing.

## CONCLUSION

When considered more broadly, Mathisen's claims of ineffective assistance of counsel fail for another reason: Bonsib's representation was extremely effective. There has been no claim that Mathisen could have avoided conviction. By pursuing Bonsib's chosen strategy, and benefiting from his capable advocacy, Mathisen received a significantly lower base offense level based on the Court's finding of a lower drug quantity than that proposed by the Government, no enhancements for obstruction of justice, a lower enhancement for his role in the offense than that proposed by the Government, and a two-level downward adjustment for acceptance of

responsibility that had been opposed by the Government. In the end, the Court found that his total offense level was 9 levels lower than that proposed by the Government, and he received a 108-month sentence, far below the 240-month sentence recommended by the Government. Mathisen was indeed well-served by his experienced and able counsel.

For the foregoing reasons, Mathisen's § 2255 Motion is DENIED. A separate Order shall issue.

Date: July 11, 2018

THEODORE D. CHUANG
United States District Judge